**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| David Gecht, | |
| *Plaintiff,* | |
| | No. 23 CV 1742 |
| v. | |
| Reynaldo Guevara, *et al.*, | |
| *Defendants.* | |

| | |
|---|---|
| Richard Kwil, | |
| *Plaintiff,* | |
| | No. 23 CV 4279 |
| v. | |
| | Judge Lindsay C. Jenkins |
| Reynaldo Guevara, *et al.*, | |
| *Defendants.* | |

**MEMORANDUM OPINION AND ORDER**

In March of 1999, Plaintiffs David Gecht and Richard Kwil were arrested and interrogated in connection with the murder of Roberto Cruz. Each made an incriminating confession, was convicted, and served 23 and 24 years in prison before being exonerated and released. Plaintiffs bring individual actions against the Assistant Cook County State's Attorneys ("ASA") involved in taking their statements, Cook County, and others. Before the Court are the ASA Defendants and Cook County's motions to dismiss the complaints in their entirety. Given that *Gecht* and *Kwil* are related cases, and the parties have filed joint briefs, the Court resolves both

1

motions in this single order. For the reasons stated below, the motions are granted in part and denied in part.

## I.    Background

The Court takes Plaintiffs' well-pleaded factual allegations as true for purposes of ruling on the motion to dismiss. *See Smith v. First Hosp. Lab'ys, Inc.*, 77 F.4th 603, 607 (7th Cir. 2023). On January 29, 1999, Roberto Cruz was murdered shortly after leaving a nightclub in Chicago, Illinois. [*Gecht* Dkt. 95, ¶¶ 29–31; *Kwil* Dkt. 50, ¶¶ 25–27.][1] A bouncer gave police descriptions of two men seen arguing with Cruz at the club. [*Gecht* Dkt. 95, ¶ 32; *Kwil* Dkt. 50, ¶ 28.] The next day, police received an anonymous tip that Ruben Hernandez and another individual, "Benjamin D.," bragged that they'd shot Cruz because he owed Benjamin money. The tipster also correctly stated that Cruz had been killed by his car shortly after leaving a bar in the area. [*Gecht* Dkt. 95, ¶¶ 34–35; *Kwil* Dkt. 50, ¶¶ 30–31.] This information was shared with Detectives Reynaldo Guevara and Ernest Halvorsen, who are also defendants in these cases ("Police Defendants"). [*Gecht* Dkt. 95, ¶ 36; *Kwil* Dkt. 50, ¶ 32.] Cruz's mother confirmed that Hernandez and Benjamin were enemies of Cruz. The detectives also pulled rap sheets and Central Booking Reports and for the two men and discovered that Benjamin matched the description of one of the men seen arguing with Cruz on the night of his murder. [*Gecht* Dkt. 95, ¶¶ 36–38; *Kwil* Dkt. 50, ¶¶ 32–

---

[1]    Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

34.] There is no indication that police questioned or took immediate action against Hernandez or Benjamin. [*Gecht* Dkt. 95, ¶¶ 39–40; *Kwil* Dkt. 50, ¶ 35–36.]

Five weeks later, Police Defendants arrested Gecht, Kwil, and Hernandez in a 24-hour period in March of 1999.[2] [*Gecht* Dkt. 95, ¶ 41; *Kwil* Dkt 50, ¶ 37.] The complaints do not present a clear timeline of events, but in some order during this period, all three were individually taken to the Area Five police station for interrogations resulting in false confessions.

Police Defendants questioned Gecht over several hours, showing him pictures of Cruz, and feeding him details about how they thought the crime occurred. [*Gecht* Dkt. 95, ¶¶ 44, 48, 51.] Throughout this time, Police Defendants physically abused Gecht, including when he denied involvement in the crime and asked for a phone call and attorney. [*Id.* at ¶¶ 47–50.] Gecht was slapped and punched multiple times and left with a cut in his mouth and a chipped tooth. [*Id.* at ¶ 50.] Police Defendants told Gecht that he could go home if he signed a statement confessing to participating in the crime. [*Id.* at ¶ 52.] Gecht eventually relented; he gave a signed statement to ASA Defendant Brenden McGuire confessing to shooting Cruz with Kwil and Hernandez assisting.[3] [*Id.* at ¶¶ 54, 56.] McGuire "walk[ed]" Gecht through Police Defendants' version of events and had Gecht confirm them. [*Id.* at ¶ 59.] McGuire was also present at Area Five while the interrogation was ongoing. [*Id.* at ¶ 57.]

---

[2] Ruben Hernandez brought a separate case against the same defendants based on the same events. *Hernandez v. Guevara*, No. 23-cv-15375 (N.D. Ill. Oct. 27, 2023).

[3] Defendant Brendan McGuire was incorrectly captioned as "Brendan Maguire." [*Gecht* Dkt. 106 at 1.]

Police Defendants also arrested Kwil. As with Gecht, they interrogated Kwil about Cruz's murder for multiple hours at the Area Five police station. [*Kwil* Dkt. 50, ¶ 38.] They attempted to force Kwil to confess to participating in the murder by yelling at and threatening him. [*Id.* at ¶ 41.] Over the course of the interrogation, Police Defendants fed Kwil details about the crime and their theory of how it occurred. [*Id.* at ¶ 42.] They showed Kwil a photo of Gecht and told Kwil that he could go home if he signed a statement confessing that Gecht murdered Cruz. [*Id.* at ¶ 44.] Kwil eventually relented and gave a signed statement to ASA Defendant Michael Hood, confessing that Gecht committed the crime with Kwil and Hernandez assisting. [*Id.* at ¶¶ 45–47.] Hood "walk[ed]" Kwil through this version of events to have him confirm it. [*Id.* at ¶ 50.] Hood was also present at Area Five while the interrogation was ongoing. [*Id.* at ¶ 48.]

Hernandez was arrested the same day and similarly interrogated at Area Five about Cruz's murder. [*Gecht* Dkt. 95, ¶ 62; *Kwil* Dkt. 50, ¶ 41.] After numerous interrogations involving physical abuse and accusations, he ultimately gave a false statement to McGuire implicating himself, Gecht, and Kwil, which he refused to sign. [*Gecht* Dkt. 95, ¶¶ 67–68; *Kwil* Dkt. 50, ¶¶ 61, 65–66.]

Police Defendants also allegedly arrested and interrogated Colleen Miller, Gecht's girlfriend, at Area Five. [*Gecht* Dkt. 95, ¶ 77, 83; *Kwil* Dkt. 50, ¶ 68, 74.] They threatened to charge her as well if she did not cooperate and provide a statement. [*Gecht* Dkt. 95, ¶ 80; *Kwil* Dkt. 50, ¶ 71.] Within 20 minutes of being arrested, Miller

4

provided a statement to McGuire claiming Gecht had confessed to her about the murder. [*Gecht* Dkt. 95, ¶ 81, 84; *Kwil* Dkt. 50, ¶ 72, 75.]

Gecht and Kwil's statements were used to convict them (and Hernandez), as co-defendants, of Cruz's murder. [*Gecht* Dkt. 95, ¶¶ 60, 75, 88–95; *Kwil* Dkt. 50, ¶¶ 51, 66, 79–84.] Miller's statement was also allegedly used to further their prosecutions. [*Gecht* Dkt. 95, ¶¶ 86; *Kwil* Dkt. 50, ¶¶ 77.] Between June 2022 and July 2023, their convictions were vacated, and the State entered a motion of *nolle prosequi* and dismissed all charges against them. [*Gecht* Dkt. 95, ¶¶ 104–05; *Kwil* Dkt. 50, ¶¶ 93–94.]

Plaintiffs filed these lawsuits pursuant to 42 U.S.C. § 1983 raising three federal and three state law claims against both Hood and McGuire: coercing a false confession and fabricating evidence in violation of the Fifth and Fourteenth Amendments (Count II); malicious prosecution and unlawful detention in violation of the Fourth and Fourteenth Amendments (Count III); failure to intervene (Count IV); malicious prosecution (Count VII); intentional infliction of emotional distress (Count VIII); and willful and wanton conduct (Count IX). [*Gecht* Dkt. 95, ¶¶ 157–77, 197–209; *Kwil* Dkt. 50, ¶¶ 146–66, 186–98.] They also bring indemnification claims against Cook County based on ASA Defendants' liability (Count XII). [*Gecht* Dkt 95, ¶¶ 223–24; *Kwil* Dkt 50, ¶¶ 212–13.]

## II. Legal Standard

At the motion to dismiss stage, the Court takes well-pleaded factual allegations as true and draws reasonable inferences in favor of the plaintiff. *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023); *Reardon v. Danley*, 74 F.4th 825, 826–

27 (7th Cir. 2023). "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (cleaned up). This occurs when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Garrard v. Rust-Oleum Corp.*, 575 F. Supp. 3d 995, 999 (N.D. Ill. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted)).

## III. Analysis

Hood and McGuire move to dismiss the complaints on several grounds, including qualified immunity, improper group pleading, and failure to state a claim.[4] The Court addresses each argument in turn.

### A. Qualified Immunity

Hood and McGuire argue that all their alleged actions are entitled to qualified immunity. The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Siler v. City of Kenosha*, 957 F.3d 751, 758 (7th Cir. 2020). This inquiry asks (1) "whether the plaintiff's allegations make out a deprivation of a constitutional right" and (2) "whether the right was clearly established at the time of defendant's alleged

---

[4]     Hood and McGuire also argue that absolute immunity bars all federal claims against them. [*Gecht* Dkt. 106 at 5–10; *Kwil* Dkt. 57 at 9–10.] Because the Court dismisses all federal claims and gives Gecht and Kwil an opportunity to cure any pleading defects, there is no need to address absolute immunity at this stage.

misconduct." *Taylor v. City of Milford*, 10 F.4th 800, 806 (7th Cir. 2021). The Court may consider these issues in either order. *Tousis v. Billiot*, 84 F.4th 692, 697 (7th Cir. 2023).

Claims are generally not dismissed under Rule 12(b)(6) on qualified immunity grounds because qualified immunity depends on the facts of the case, and plaintiffs are "not required initially to plead factual allegations that anticipate and overcome" an affirmative defense. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (quoting *Jacobs v. City of Chi.*, 215 F.3d 758, 765 n.3 (7th Cir. 2000)). However, resolution at this stage is appropriate when qualified immunity turns on the second prong—whether the constitutional right at issue was clearly established at the time it was allegedly violated—because it is purely a legal question. *Jacobs*, 215 F.3d at 765 n.3.

Hood and McGuire first argue that their actions are broadly entitled to qualified immunity because Gecht and Kwil have not alleged facts showing the prosecutors were aware that their confessions were coerced or false. [*Gecht* Dkt. 106 at 19–20; *Kwil* Dkt. 57 at 19–20.] But the arguments for dismissal are fact dependent and dismissal on qualified immunity grounds would be premature. *Alvarado*, 267 F.3d at 651; *Jacobs*, 215 F.3d 758, n.3 ("[I]n many cases, the existence of qualified immunity will depend on the particular facts of a given case.").

By contrast, qualified immunity as to the failure to intervene claim (Count IV) can be resolved now as a question of law. Gecht and Kwil claim that Hood and McGuire failed to stop Police Defendants from violating their constitutional rights

despite having an opportunity to do so. [*Gecht* Dkt. 95, ¶¶ 172–77; *Kwil* Dkt. 50, ¶¶ 161–66.] Hood and McGuire counter that there was no clearly established duty for prosecutors to intervene when Defendants' alleged misconduct occurred in 1999. [*Gecht* Dkt. 106 at 20–21; *Kwil* Dkt. 57 at 20–21.] The Court agrees.

"To be clearly established, the right must be 'sufficiently clear that every reasonable official would understand that what he is doing violates that right.'" *Schimandle v. Dekalb Cnty. Sheriff's Off.*, No. 23-2151, 2024 WL 3964260, at *4 (7th Cir. Aug. 28, 2024) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Plaintiffs must show that precedent "placed the statutory or constitutional question beyond debate" or that the "conduct is so egregious and unreasonable that . . . no reasonable officer could have thought he was acting lawfully." *Id.*; *see also Hope v. Pelzer*, 536 U.S. 730, 741–42 (2002). Notice is key; precedent need not be identical, but it should be "closely analogous," such that the "state of the law" at the time of an incident provided "fair warning" to the defendants "that their alleged [conduct] was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Pelzer*, 536 U.S. at 739).

Gecht and Kwil cite two pre-1999 cases recognizing a duty intervene: *Byrd v. Brishke*, 466 F.2d 6 (7th Cir. 1972) and *Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994). [*Gecht* Dkt. 115 at 26.] *Byrd* and *Yang* are not closely analogous to Gecht and Kwil's circumstance because they only acknowledge a duty to intervene for law enforcement officers—there is nothing to suggest that these cases would have put *prosecutors* on notice of a similar duty to intervene. The very evolution of the duty to intervene belies this notion.

8

*Byrd* is a "seminal case . . . on the duty of an *officer* to intervene," *Yang*, 37 F.3d at 285 (emphasis added). Since then, the duty of law enforcement officers to intervene has been widespread in the Seventh Circuit. *See, e.g.*, *id.* (law enforcement officers can be liable under section 1983 if they fail to intervene to prevent other officers from infringing on citizens' constitutional rights); *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (same); *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009) (same). By contrast, courts in this district grappled with whether there was such a duty for prosecutors and repeatedly rejected it. *See, e.g.*, *Gordon v. Devine*, No. 08 C 377, 2008 WL 4594354, at *17 (N.D. Ill. October 14, 2008); *Andrews v. Burge*, 660 F. Supp. 2d 868, 876 n.6 (N.D. Ill. 2009); *Hobbs v. Cappelluti*, 899 F. Supp. 2d 738, 773 (N.D. Ill. 2012).

The tide only turned in 2012 when the Seventh Circuit held (outside of the failure to intervene context) that "prosecutors and police are subject to the same constraints" when acting in an investigatory capacity. *Whitlock v. Brueggemann*, 682 F.3d 567, 581 (7th Cir. 2012). District courts have since interpreted *Whitlock* to impose a duty to intervene on prosecutors as well as police officers. *See, e.g.*, *Saunders v. City of Chi.*, No. 12-cv-09158, 2013 WL 6009933, at *10 (N.D. Ill. Nov. 13, 2013) (extending failure to intervene liability to prosecutors due to *Whitlock*); *Wilson v. Burge*, 667 F. Supp. 3d 785, 851 (N.D. Ill. 2023) (collecting cases). But these recent decisions only prove the point: such a right was nonexistent in 1999.

Gecht and Kwil alternatively cite *Hope*, which held that "officials can still be on notice that their conduct violates clearly established law even in novel factual

circumstances" where no precedent exists. *Hope*, 536 U.S. at 741. *Hope* is reserved for "rare cases" where the conduct is "so egregious" that it is a "patently obvious" violation. *Leiser v. Kloth*, 933 F.3d 696, 702, 704 (7th Cir. 2019) (quoting *Jacobs*, 215 F.3d at 767). Gecht and Kwil briefly posit that the violations were clear because prosecutors have a duty to ensure that investigations are constitutionally compliant and, as lawyers, "they know the rules." [*Gecht* Dkt. 115 at 26–27.] But they have not explained why Hood or McGuire's alleged conduct was particularly egregious such that it provides unmistakable notice or shown how it fits into the narrow line of *Hope* cases. Instead, they merely presume notice, which is precisely what *Hope's* narrow scope guards against.

Gecht and Kwil had a burden to show a right clearly established in 1999. They failed to meet it. Consequently, Hood and McGuire are entitled to qualified immunity on Count IV.

## B. Group Pleading

Next, Hood and McGuire argue that the remaining section 1983 claims are deficient because the complaints use improper "group pleading" by referring to "Defendants" broadly throughout the complaint instead of specifying which allegations apply to Hood and McGuire as opposed to Police Defendants. [*Gecht* Dkt. 106 at 10–14; *Kwil* Dkt. 57 at 10–14.] Consequently, Hood and McGuire lack adequate notice as to how they are alleged to have been personally involved in violating Gecht and Kwil's constitutional rights. [*Id.* at 11.]

It is well established that section 1983 lawsuits against individuals "require personal involvement in the constitutional deprivation to support a viable claim."

*Gonzales v. McHenry Cnty., Ill.*, 40 F.4th 824, 828 (7th Cir. 2022); *see also Johnson v. Rimmer*, 936 F.3d 695, 710 (7th Cir. 2019). "To establish personal liability, the plaintiff must show that the relevant official 'caused the constitutional deprivation at issue' or 'acquiesced in some demonstrable way in the alleged constitutional violation.'" *Gonzalez*, 40 F.4th at 828 (quoting *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003)). Despite the personal involvement requirement, "[g]roup pleading, while not ideal, is not categorically impermissible" for a section 1983 claim. *Fulton v. Bartik*, 547 F. Supp. 3d 799, 810 (N.D. Ill. 2021); *see also Dukes v. Washburn*, 600 F. Supp. 3d 885, 898 (N.D. Ill. 2022). The Seventh Circuit has allowed group pleading where, "reading the allegations sensibly and as a whole, there is no genuine uncertainty regarding who is responsible for what." *Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013).

The complaints satisfy this minimal standard. They separate defendants into two groups: "Prosecutor Defendants," consisting of Assistant Cook County State's Attorneys Hood and McGuire, and "Police Defendants," consisting of Chicago Police officers named as defendants, and largely adhere to this bifurcated terminology throughout. [*Gecht* Dkt. 95, ¶¶ 21, 25; *Kwil* Dkt. 50, ¶¶ 18, 21.] Although Hood and McGuire identify over 50 paragraphs that use the collective term "Defendants," context makes clear which defendants are referenced at any given point.

One portion of these paragraphs consists of factual allegations. [*Gecht* Dkt. 95, ¶¶ 2–3, 8–9, 14, 16–17, 23, 26, 54–56, 60, 62, 66, 74–75, 77, 85–86, 91, 94, 101, 109–12, 124–25, 134, 144; *Kwil* Dkt. 50, ¶¶ 2, 5–7, 13, 20, 22, 51, 53, 66, 68, 77, 79, 82–83,

11

86, 90, 98–99, 101, 113–14, 123, 133, 139, 149–51, 153, 157, 159, 163, 165, 172, 185, 188, 191, 194, 197–98, 202, 204.] In some cases, the paragraph first references a subgroup of defendants and thereafter refers to "Defendants" generally. Read in context, these collective references are unambiguous in whether they refer to Police or Prosecutor Defendants. [*E.g.*, *Gecht* Dkt. 95, ¶¶ 23, 77, 109; *Kwil* Dkt. 50, ¶¶ 20, 68, 98.] Similarly, references to "Defendants" related to the City of Chicago, [*E.g.*, *Gecht* Dkt. 95, ¶¶ 109–11, 124–25, 134, 144; *Kwil* Dkt. 50, ¶¶ 98–100, 113–14, 123, 133], logically refer to Police Defendants since the complaint defines Police Defendants as agents and employees of the City of Chicago and Prosecutor Defendants as agents and employees of Cook County. [*Gecht* Dkt. 95, ¶¶ 26–27, 221, 223; *Kwil* Dkt. 50, ¶¶ 22–23, 210, 212.] Other allegations describe "Defendants" as having participated in violent and psychological coercion and fabricating Hernandez, Gecht, Kwil, and Miller's false confessions. [*Gecht* Dkt. 95, ¶¶ 2–3, 8, 60; *Kwil* Dkt. 50, ¶¶ 2, 5–6.] But elsewhere, the complaints make the same claims specifically about Hood and McGuire. [*Gecht* Dkt. 95, ¶¶ 158–59; *Kwil* Dkt. 50, ¶¶ 147–48.] Overall, it is clear what specific actions Hood and McGuire are alleged to have taken, such as being present at Area Five during the interrogations and walking suspects and witnesses through their statements. *Iqbal*, 556 U.S. at 680–81. [*Gecht* Dkt. 95, ¶¶ 54, 56–57, 59; *Kwil* Dkt. 50, ¶¶ 46, 48–50.]

Hood and McGuire also point to paragraphs that assert claims using the collective term "Defendants." [*Gecht* Dkt. 95, ¶¶ 150, 160–62, 164, 168, 170, 174, 176, 183, 188, 196, 199, 202, 205, 208–09, 213, 215; *Kwil* Dkt. 50, ¶¶ 149–51, 153, 159, 163

165, 172, 185, 188, 191, 194, 197–98, 202, 204.] Here too, each count begins by identifying the specific defendant group it is brought against.[5] More general references to "Defendants" thereafter logically refer to the defendants against whom the specific claim is made.

Reading each complaint as a whole, "there is no genuine uncertainty regarding who is responsible for what." *Engel*, 710 F.3d at 710.

### C.    Rule 12(b)(6) Motion

To survive a motion to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6), a complaint must include sufficient factual allegations to show a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, the facts in the complaint must present a claim that rises "above the speculative level." *Id.* at 545. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" cannot by themselves satisfy Rule 8's requirement that the complaint show the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *see also Iqbal*, 556 U.S. at 678.

### 1.    Count II: Coerced & False Confession

Gecht and Kwil's claims under Count II are two-fold: they bring coerced and false confession claims under the Fifth and Fourteenth Amendments. They also assert fabrication of evidence claims under the Fourteenth Amendment.

---

[5]    For example, Count VIII refers to both Police and Prosecutor Defendants while Count I only refers to Police Defendants. [*Gecht* Dkt. 95, ¶¶ 146, 204; *Kwil* Dkt. 50, ¶¶ 135, 193.] References to "these Defendants" later in each count clearly refer to the subgroup initially identified.

The Fifth Amendment, made applicable to the states by the Fourteenth Amendment, prohibits the use of "involuntary" or coerced confessions in criminal cases. *Chavez v. Martinez*, 538 U.S. 760, 766, 770–71 (2003); *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1023–24 (7th Cir. 2006). To bring a Fifth Amendment claim, Gecht and Kwil must show (1) that their confessions were involuntary and coerced, and (2) that their own confessions were used against them in a criminal case. *Chavez*, 538 U.S. at 770–71. Fourteenth Amendment claims require a showing of evidence obtained through "conscience-shocking" conduct, regardless of whether the evidence is used at trial. *Id.* at 774. A fabricated evidence claim requires (1) the defendant knowingly fabricated evidence against the plaintiff, (2) the evidence was used at his criminal trial, (3) the evidence was material, and (4) the plaintiff was damaged as a result. *Patrick v. City of Chi.*, 974 F.3d 824, 835 (7th Cir. 2020).

For Hood and McGuire to be liable under section 1983, Gecht and Kwil must show that the prosecutors were "personally responsible" for deprivation of their constitutional rights. *Childress v. Walker*, 787 F.3d 433, 439–40 (7th Cir. 2015). Personal responsibility is established for one who, "having a duty under the Constitution to the plaintiff, act[s] or fail[s] to act with a deliberate or reckless disregard of plaintiff's constitutional rights . . . or the conduct causing the constitutional deprivation occurs at her direction or with her knowledge or consent." *Id.* at 440 (citations omitted) (quotations omitted).

Gecht and Kwil allege that Hood and McGuire "acting as investigators and without probable cause . . . forced [them] to make false [incriminating] statements

14

involuntarily and against [their] will[s] . . . which were used against [them] in criminal proceedings." [*Gecht* Dkt. 95, ¶ 158; *Kwil* Dkt. 50, ¶ 147.] Although they do not claim that Hood and McGuire directly engaged in all the coercive behavior of Police Defendants, they claim to allege facts showing that the prosecutors knowingly and willingly participated in a "course of conduct" that deprived Plaintiffs of their constitutional rights. [*Gecht* Dkt. 115 at 20–21.] Hood and McGuire protest that none of those allegations show that they coerced or fabricated any confession or knew the confessions were coerced or false. [*Gecht* Dkt. 106 at 15–16; *Kwil* Dkt. 57 at 16–16.]

As an initial matter, Gecht and Kwil have improperly lumped both ASA Defendants together in their coerced confession claims. Each Plaintiff alleges that only one ASA Defendant took their statement—McGuire took Gecht's; Hood took Kwil's. Neither Plaintiff alleged any other interaction with the other ASA Defendant. Yet, they each allege that the ASA Defendant with whom they did *not* interact violated the Plaintiff's due process rights by coercing false confessions from their co-defendants that were used against them in criminal proceedings. For instance, while McGuire took Gecht's statement, Hood allegedly violated Gecht's rights by coercing a confession from Kwil implicating Gecht.

It is well-established in the Seventh Circuit that "where a plaintiff attempts to assert a due process claim based upon allegations that [officials] coerced statements from co-defendants . . . he or she does not state a due process claim, but rather, a malicious prosecution claim." *Taylor v. City of Chi.*, 80 F. Supp. 3d 817, 826–27 (N.D. Ill. 2015) (citing *Petty v. City of Chi.*, 754 F.3d 416, 422–23 (7th Cir. 2014)). As the

15

Seventh Circuit has explained, "[c]oercing witnesses to speak . . . is a genuine constitutional wrong, but the persons aggrieved [are the witnesses] rather than [the arrestee]" and "[r]ights personal to their holders may not be enforced by third parties." *Buckley v. Fitzsimmons*, 20 F.3d 789, 794–95 (7th Cir. 1994). Consequently, the Court dismisses without prejudice Gecht's coerced confession claim against Hood and Kwil's coerced confession claim against McGuire.[6] Their fabricated evidence and malicious prosecution claims are cognizable against both ASA Defendants in each case if properly alleged.

The Court next addresses Gecht's coerced confession claim against McGuire, Kwil's coerced confession claim against Hood, and their fabricated evidence claims. In response to the motion, Gecht and Kwil point to a handful of allegations: (1) Hood and McGuire were present at Area Five while Gecht, Kwil, and Miller were interrogated. [*Gecht* Dkt. 95, ¶ 57; *Kwil* Dkt. 50, ¶ 48]; (2) during the interrogation, Police Defendants physically abused Gecht, chipping his tooth and cutting the inside of his mouth [*Gecht* Dkt. 95, ¶ 50]; (3) Gecht had a discernable learning disability and emotional disorder [*Id.* at ¶ 55]; (4) during the interrogation, Police Defendants threatened Kwil that he wouldn't see his daughter again unless he signed a statement [Kwil Dkt. 50, ¶ 41]; (5) after the interrogations, McGuire took Gecht and Miller's statements and Hood took Kwil's statements implicating themselves, each other, and Hernandez, which largely consisted of them "walking [each of them] through

---

[6]     The parties did not raise this issue in briefing, but the Court exercises its discretion to address an unpreserved prudential standing question *sua sponte*. *RK Co. v. See*, 622 F.3d 846, 851 (7th Cir. 2010).

Defendants' version of events to have them confirm" it. [*Gecht* Dkt. 95, ¶ 59; *Kwil* Dkt. 50, ¶ 50]; and (6) Hood and McGuire "ignored indicators" that their statements were "obviously false." [*Id.*]

Thin allegations are not fatal at the motion to dismiss stage so long as the Court can draw reasonable inferences in a plaintiff's favor that amount to a plausible claim. *Iqbal*, 556 U.S. at 678. But on these allegations, the Court would have to strain to infer that Hood and McGuire participated in coercion or were aware that Gecht and Kwil had been coerced. First, mere presence at Area Five is insufficient to show coercion or awareness of it. There are no factual allegations that Hood or McGuire participated in the interrogation, or allegations explaining how Hood and McGuire would have known Gecht and Kwil were being interrogated, much less coerced. *See Andrews v. Burge*, 660 F. Supp. 2d 868, 877 (N.D. Ill. 2009) (presence at police station insufficient to show knowledge of coercion).

Once Hood and McGuire were face to face with Gecht and Kwil, knowledge of coercion would be inferable if there were apparent signs. *See, e.g.*, *Abrego v. Guevara*, No. 23-cv-1740, 2024 WL 3566679, at *4 (N.D. Ill. July 29, 2024) (plaintiff's "body was marred by bruises" and his "underwear was soiled"); *Orange v. Burge*, No. 04 C 0168, 2008 WL 4443280, at *11 (N.D. Ill. Sept. 29, 2008) (plaintiff told prosecutor about his mistreatment by police). But the allegations here fall short. Gecht was allegedly physically beaten, resulting in a cut in his mouth and chipped tooth. [*Gecht* Dkt. 95, ¶ 50.] But it's not apparent that these injuries would be visible or attributable to recent violence and Gecht does not make the allegation that the injuries were

17

apparent. It's also not clear why Gecht's learning disability or emotional disorder would indicate coercion. Gecht isn't alleged to have told McGuire what happened. Kwil did not allege that he was physically abused at all. His "will was broken," [*Kwil* Dkt. 50, ¶ 45], but there are no allegations about how that visibly manifested. Kwil also did not allege that he told Hood about the interrogation. Without more, it is not plausible to infer that Hood or McGuire knew Gecht or Kwil had been coerced.

Finally, Hood and McGuire's alleged behavior while taking Gecht and Kwil's statements only shows fabrication, coercion or knowledge of coercion or false statements in a conclusory fashion. "[W]alking" a suspect through their statement to "have them confirm" it is abstract and does not bespeak coercion or fabrication without more. It is not the same as handing a suspect a pre-typed statement, coaching a suspect, or feeding them details to include in their statement. *Cf. Hill v. Coppleson*, 627 F.3d 601, 603–04 (7th Cir. 2010) (prosecutor alleged to have fed plaintiff details about murder he later confessed to); *Orange*, 2008 WL 4443280, at *10 (prosecutor alleged to have coached plaintiff on false confession). Hood and McGuire also allegedly ignored signs that the statements were false, but there are no factual allegations showing they knew they were false.

Hernandez and Miller's interrogations don't add any more color to Plaintiffs' fabrication claims. Police Defendants allegedly physically abused Hernandez and threatened Miller to obtain false confessions against Plaintiffs. [*Gecht* Dkt. 115 at 18.] Again, the complaints fail to allege that any abuse was visible or otherwise

known to McGuire or explain how he knew their confessions were false. This gap in the pleadings is fatal for a fabrication claim. *Patrick*, 974 F.3d at 835.

The Court is aware that this case is one among many brought by exonerated defendants against former Chicago Police Detective Guevara and his Area Five colleagues for coercion and other constitutional violations. *See, e.g.*, *Abrego*, 2024 WL 3566679, at *1 (collecting cases). And it recognizes that ASAs might have been involved. But plaintiffs still have a burden to allege concrete facts demonstrating that defendants were personally responsible for any coercion or fabrication that occurred. They have not done so here.

The Court's normal practice, in accordance with Seventh Circuit guidance, is to give one chance to amend after a motion to dismiss is briefed, even if a plaintiff has amended previously. *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). And Seventh Circuit precedent is clear that the Court should err on the side of allowing an amendment; "a court should deny leave to amend only if it is certain that amendment would be futile or otherwise unwarranted." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015). The Court dismisses Count II with leave to amend.

### 2. Count III: Malicious Prosecution & Unlawful Detention

Count III asserts malicious prosecution and unlawful detention claims under the Fourth and Fourteenth Amendments.

For malicious prosecution, a plaintiff must allege that: (1) the prosecution was instituted without any probable cause; (2) the motive in instituting the prosecution was "malicious"; and (3) a favorable termination of the underlying criminal

prosecution. *Thompson v. Clark*, 142 U.S. 36, 44 (2022). "Malicious" is defined as "without probable cause." *Id.* Unlawful detention claims also require lack of probable cause. *Manuel v. City of Joliet*, 580 U.S. 357, 364–65 (2017).

Given that Gecht and Kwil have not alleged sufficient facts to show that Hood or McGuire coerced Gecht or Kwil or knew their confessions were false or coerced, *supra* Part III.C.1, it follows that Gecht and Kwil have not shown a lack of probable cause to charge them. *Cf. Wilson*, 667 F. Supp. 3d at 873 (absence of probable cause alleged where defendants alleged to have known plaintiff's confession was coerced). Thus, the Court also dismisses their Fourth Amendment claims with leave to amend.

Count III also brings malicious prosecution claims under the Fourteenth Amendment. Hood and McGuire argue that this claim is improper because Gecht and Kwil also bring malicious prosecution claims under Illinois law. [*Gecht* Dkt. 106 at 16–17.] Generally, a plaintiff "cannot invoke the substantive due process clause where state laws provide an adequate postdeprivation remedy for the complained-of conduct." *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010). Accordingly, the Seventh Circuit has rejected federal malicious prosecution claims because Illinois law recognizes tort claims for malicious prosecution. *See e.g., id.*; *Ray v. City of Chi.*, 629 F.3d 660, 664 (7th Cir. 2011).

Gecht and Kwil argue that this Court should chart a new course because the Supreme Court has "implied" that the Fourteenth Amendment can support a malicious prosecution claim. [*Gecht* Dkt. 115 at 22–23 (citing *McDonough v. Smith*, 588 U.S. 109, 115 n.2 (2019)).] The Court declines to do so. *McDonough* did not

20

approve such a claim and *Thompson*, which post-dates *McDonough*, declined to consider it. *Thompson*, 596 U.S. at 43 n.2. Although it might be considered an "open question," it is "likely preclude[d]" by the availability of a state remedy. *Jones v. York*, 34 F.4th 550, 564 n.8 (7th Cir. 2022).

Count III also cites the Fourteenth Amendment as a basis for their unlawful detention claims. Such a claim only sounds in the Fourth Amendment. "*Manuel I* makes clear that the Fourth Amendment, not the Due Process Clause, governs a claim for wrongful pretrial detention." *Lewis v. City of Chi.*, 914 F.3d 472, 475 (7th Cir. 2019) (citing *Manuel*, 580 U.S. at 365-69); *see also Patrick*, 974 F.3d at 834.

In sum, the Court dismisses Gecht and Kwil's Fourth Amendment claims with leave to amend, and their Fourteenth Amendment claims with prejudice.

## IV.     Conclusion

For the reasons stated herein, Hood and McGuire's motions to dismiss are granted in part and denied in part.  Plaintiffs' Fifth and Fourteenth Amendment (Count II), and Fourth Amendment claims (Count III) are dismissed without prejudice. Their failure to intervene (Count IV) and remaining Fourteenth Amendment claims (Count III) are dismissed with prejudice. Gecht and Kwil may file amended complaints by or before October 14, 2024. If they do not, their remaining state law claims (Counts VII, VIII, and IX) will be dismissed for lack of supplemental jurisdiction, 28 U.S.C. § 1367(c)(3), and their indemnification claims against Cook County (Count XII) will be dismissed for lack of Cook County ASA defendants to indemnify. The motions are otherwise denied.


Enter: 23 CV 1742 and 23 CV 4279
Date:  September 26, 2024

_____

Lindsay C. Jenkins
United States District Judge